## SMITH *v.* DOUGHTY.

1. CONTRACTS — OFFER AND ACCEPTANCE NEED NOT BE SIMULTANEOUS.

   It is not essential that an offer and acceptance be simultaneous, but the minds of the parties are construed to meet when an unrevoked proposal or offer is accepted by those to whom it is directed by word or act involving a consideration.

2. SAME — GUARANTY — EVIDENCE — TRIAL—INSTRUCTIONS—APPEAL AND ERROR.

In an action by an automobile salesman against his former employer for the amount of loss sustained by plaintiff in the sale of his automobile used as a demonstrator while in defendant's employ, and which he refused to take back when plaintiff left, the court, in submitting to the jury the question as to whether plaintiff purchased his car in reliance upon defendant's offer in writing to his salesmen to protect them from loss in the sale of their demonstrators, *held*, to have committed no error against defendant.

3. SAME—EVIDENCE—QUESTION FOR JURY.

Where the only restriction upon defendant's guaranty to protect his salesmen from loss in the resale of their demonstrator automobiles was that the resale price must be approved by him, and plaintiff testified that before leaving defendant's employ and before selling the car he offered to return it to defendant, to resell, who refused to accept it, saying that plaintiff could do with it what he had a mind to, the question of defendant's liability *held*, properly submitted to the jury.

Error to Wayne; Moynihan (Joseph A.), J. Submitted January 11, 1924. (Docket No. 64.) Decided July 24, 1924.

Assumpsit by Thad Smith against William J. Doughty on a contract of guaranty. Judgment for plaintiff. Defendant brings error. Affirmed.

*Blain & Martz,* for appellant.

*Henry P. Seaborg,* for appellee.

STEERE, J. During the year 1920 and for some time previous defendant, Doughty, ran a garage and was engaged in the automobile business in the city of Detroit having the exclusive agency of the Franklin motor car in said city, for which purpose he maintained salesrooms and repair shop and a used car department in charge of an employee acting as man-

ager, with sub-agents employed in selling his cars on commission. Plaintiff, Smith, was one of his salesmen and had been in his employ for nearly four years at the time he left. The agents were required to own Franklin demonstration cars and during that period Smith had purchased four or five from defendant, the first in the spring of 1917. He disposed of them from time to time and bought new ones from Doughty, selling the old and using the proceeds to buy the new. None of them was sold at a loss except the car involved in this controversy. Doughty carried insurance on the cars which Smith bought from him. The last before the one in controversy was damaged by fire. Smith sold the chassis for $1,400 paying that amount and giving a note for $950 to Doughty for a new one. When the insurance was paid he was credited with a sufficient amount by Doughty to liquidate the note.

On September 15, 1919, while Smith was still in Doughty's employ the latter wrote the following letter to his salesmen and caused it to be hung up in his salesroom:

"*Dear Sir:* Kindly be advised that dating from to-day, September 15, 1919, as follows:

"Commissions on sale of all new cars will be four (4) per cent. of list price.

"Salesmen will be charged one hundred ($100.00) dollars plus cost, for new cars when purchased by themselves.

"Any loss on sale of demonstrators will not be charged to salesman, as he will receive the same amount that he paid for car on re-sale. Sale price of demonstrator must be approved by W. J. Doughty before sale.

"Allowance of ten ($10.00) dollars per month will be allowed each salesman for upkeep of his demonstrator, provided demonstrator is used for demonstrations.

"Very truly yours,
"W. J. DOUGHTY."

Smith testified that Doughty gave him a copy of this "agreement," and he bought his last demonstrator car relying on it. He found an opportunity of which he desired to avail himself for employment with the Cadillac Motor Car Company. He so notified Doughty, and on September 1, 1920, left his employ. A few days before he left he had a talk with Doughty and requested him to take back the Franklin car which he had bought of him the previous February to use as a demonstrator. He testified Doughty told him he could leave it with the used car man, Montgomery, and have him sell it for him, or "to do what I was a mind to do with it." Smith took his car with him when he went to his employment with the Cadillac Company where he tried, and had the Cadillac people try, to sell it. His reason for not leaving the car with Montgomery was that Doughty would not take the responsibility himself "and release me of possible responsibility of a lot of joy riding that was smashing up a few cars around there. * * * I felt he was the man it should go back to, not the used car man." After he had gone to the Cadillac Company he requested Doughty to take the car back, to take it off his hands and sell it, "possibly ten days or two weeks after, the second time I went back. * * * *Q.* What was his reply? *A.* Well, that he said, 'the car belongs to you and you can do as you are a mind to with it.' " Following this he sent, through an attorney, a notice to Doughty which in brief advised him that he having refused to take the car back when tendered to him the best offer possible in the open market would be obtained, and submitted for his approval, "in order to mitigate damages" and he would be looked to for the difference between the $2,350 Smith had paid him for the car and the price obtained for it in the open market. Doughty replied to the attorney's letter that Smith was

not in his employ "and as for your instructing your client what to do with the automobile is immaterial to me as he owns his car." Notice was thereafter sent Doughty that Smith had sold his car on October 23, 1920, for $1,800, being the highest price obtainable in the open market, and $550 less than Smith paid him for it, to which no reply is shown.

Doughty's version of the interview is that before Smith quit,—

"I said 'What about your automobile?' He said, 'I need it. I want to paint it, and think I can get more from the Cadillac for it than what you can get for it here.' I said, 'All right;' and he took the car and left. I did not see him again until some weeks or months later, and he came with a gentleman, I think his name was Mr. Hafner, and when he left he said, 'What about your car?' I said, 'Mr. Smith, it is yours, you left and took it with you.' He did not at any time ask me to take the car back and buy it, or did he at any time offer me the car to enable me to sell it." .

Smith denied making the statements imputed to him before he left by Doughty and explained that the Cadillac people had then agreed to furnish him a car, he had no use for his Franklin any more, and Doughty was in a better position to dispose of it than they were at the Cadillac.

These and other analogous conflicts in the testimony raised issues of fact which the court submitted to the jury. Plaintiff had verdict and judgment for $550. Defendant's contentions summarize to the propositions that there was no contract, and if there was plaintiff violated it by selling the car without Doughty's approval, for which reasons a verdict should have been directed for defendant as asked.

The promissory feature of the letter Doughty wrote his salesmen and emphasized as a continuing offer by posting it up in his salesroom is the statement, to be read in connection with the rest of the letter, that—

"Any loss on sale of demonstrator will not be charged to salesman, as he will receive the same amount that he paid for car on re-sale. Sale price of demonstrator must be approved by W. J. Doughty before sale."

Defendant's counsel contend that this paragraph "is a mere statement of intention and there was no meeting of minds in a common intention" which must always be shown as the foundation of every valid contract. In support of this counsel cite 13 C. J. pp. 263, 266, 287, 542, and other unquestioned authorities covering various features of that elementary principle in the law of contracts. But it is not essential that an offer and acceptance be simultaneous. The minds of the parties are construed to meet when the unrevoked proposal or offer is accepted by those to whom it is directed by word or act involving a consideration. This general offer or proposal by Doughty to his salesmen that if they bought a demonstrator car of the kind he dealt in he would protect them from loss and see that on resale they received the same they paid, was an offer to a class. That feature of the law of contracts is also elucidated in 13 C. J. pp. 273-275, as the following excerpts indicate:

"A general offer made to the public, or to a particular class of persons, may be accepted by anyone, or by anyone coming within the description of the class, as for example an offer of a prize for a design for a public building, or a bonus to anyone who will make a certain improvement, or of a reward, and other like cases, such offers, although made to an unascertained person or persons, cannot of course be turned into an agreement until they have been accepted by an ascertained person, but as soon as there is an acceptance by a person within the offer there is a binding contract. * * *

"What is a sufficient consideration for a parol promise depends on the terms prescribed by the promisor and may be as various as the human mind; but it must in general be some act done or a for-

bearance to act, or some engagement made at his request and beneficial to him or detrimental to the promisee.    *    *    *

"An acceptance of an offer may be by act, as where an offer is made that the offerer will pay or do something else, if the offeree shall do a particular thing. In such a case performance is the only thing needful to complete the agreement and to create a binding promise."

When the proposal in the letter Doughty sent to the salesmen in his service was accepted and acted upon by any one of them it became a binding contract between him and the member of that class so accepting. Whether during the period of his employment with Doughty plaintiff bought of him a Franklin demonstrator accepting and relying upon that offer was left by the court to the jury as an issue of fact.    In so doing the court committed no error against defendant.

The claim that plaintiff did not comply with the prerequisites essential to create liability as shown by his own testimony, is based on his statement that he requested Doughty to buy the auto, take it back, and take it off his hands.    It is true that he so testified, but he also testified that was after he had left, and said that in the interview shortly before he left,

"I didn't ask him to buy the car from me then, I merely wanted to turn it back.    At that time Mr. Doughty said he had nothing to do with it.    He said 'You own the car.'    I could do as I was a mind to do with it.    *    *    *    In accordance with this agreement, I notified Mr. Doughty that I was going to sell the car."

While in the searching cross-examination to which he was subjected plaintiff was far from an ideal witness and some of his statements do not harmonize, he was flatly asked and answered on cross-examination:

"Q. He told you to sell it, or ordered you?
"A. Yes."

On redirect-examination he was asked and answered:

"*Q.* Mr. Smith, did you at any time request Mr. Doughty to take the car off your hands and sell it?

"*A.* Yes, sir.

"*Q.* When was that?

"*A.* Just a few days before I left there, in September, and possibly ten days or two weeks after, the second time I went back.

"*Q.* In conformity with this Exhibit 1?

"*A.* Yes.

"*Q.* What was his reply?

"*A.* Well, he said, 'The car belongs to you and you can do as you are a mind to with it.' "

But conceding plaintiff made inconsistent statements during the course of his examination as to what he said or requested in those interviews the question as to which statements should be given credence was yet for the jury and not the court to determine. *Emery* v. *Accident & Guarantee Corp.*, 209 Mich. 295. Though not in all respects well told it was the substance of plaintiff's grievance as related by him that in their interviews, both before and after he left, Doughty refused to recognize any responsibility or legal liability under his letter to his salesmen, in reliance upon which plaintiff had purchased from him the Franklin demonstrator car which he used for the purpose it was bought during the time he continued in defendant's employ and for which he had no use after he left. Taking plaintiff's story as true, Doughty's contention from the beginning was that his letter furnished no basis for a binding contract, as his counsel also strenuously urged in his behalf before the trial court and here.

The proposition contained in Doughty's letter was prepared by him. He made the proposal in such language as he saw fit to adopt. He plainly stated in it that a salesman accepting and acting upon it would be protected from loss and "receive the same amount

that he paid for car on re-sale." He placed no restrictions in it as to time, manner or place of resale, or by whom it should be sold. The only limitation he provided was that the sale price should be approved by him. His counsel say in their brief that

"The paragraph shows that Doughty contemplated saving the salesman from the loss on the re-sale of his demonstrator, but nowhere does he state any intention or infer any intention of buying it back himself at the price at which it was sold to the salesman."

In other words, by disapproving any price at which it could be sold less than the salesman paid him for it Doughty could liquidate his liability.

Any uncertainties or ambiguities in the letter are to be construed most strictly against him. The restriction as to resale is not to be construed as a joker by which he can evade his direct promise to protect from loss his salesmen purchasing demonstrator cars from him. The resale for which he provides contemplates a loss in the connection used. The letter has no application to a resale where there is no loss. In its final analysis it entitles him to notice and opportunity to protect himself and minimize the loss if dissatisfied with a proposed resale negotiated by or for his salesman who purchased it from him, either by himself selling or having it sold or by assuming the responsibility and protecting the salesman from loss as he agreed to do.

The case was essentially one of disputed facts, turning on which of the parties the jury believed. The charge of the court fairly advised the jury of the theories and claims of the respective sides and where the burden of proof rested. While certain excerpts from the charge on which defendant assigns error might seem questionable considered by themselves, yet in connection with the charge taken in its entirety we do not find them misleading or amounting to prejudicial error. In fact, certain portions of the

charge contain more marked inaccuracies unfavorable to plaintiff than those of which defendant complains; but connectedly viewed we conclude the charge fairly submitted the case to the jury on the controlling issues of fact for their determination.

The judgment is affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.